Wright, J.,
delivered the opinion of the Court.
*309 This was an action of trespass, for an alleged illegal seizure and sale of a piano forte, which, it is conceded, at one time belonged to Michael Mulholland, but which the plaintiff, who is Ms brother, claims to have purchased of him in the State of Virginia, where, at the time, they both ’resided.
There is evidence tending to show that the said Michael had become indebted to the plaintiff in the sum of about $340, for work done for him by the plaintiff, in the completion of a contract upon a railroad, the said Michael being the contractor; and that in payment of this debt, he let the plaintiff have the piano. Subsequent to this sale, the said Michael removed to the State of Tennessee; and there is proof that when he was about leaving the State of Virginia, the plaintiff loaned the piano to his wife, who seems to have been a teacher of music, telling her that it would help support her; and that she and her husband brought it with them to Jefferson county, in this State, where certain of his creditors, whose debts, as is to be inferred from this record, were contracted after his removal from Virginia, caused executions to be issued to the Sheriff, under which he made sale of the piano 1; and this is the trespass complained of. Verdict and judgment were rendered for the defendants, and the plaintiff appeals. Upon the trial, it would seem, the right of the plaintiff to recover was denied, both upon the ground that no sale of the piano had been made to him, and if made, that the sale was fraudulent, and intended to hinder the creditors of said Michael, he being, at the time, very much indebted.
The plaintiff took the deposition of one Hancock, in which there, was proof to the effect that he was not *310 present, and did not witness the sale of the piano by Michael to the plaintiff; but that in June, 1854, the said Michael, being largely indebted to him, and he being security for him to others, he agreed to give him a deed of trust on his property, for the benefit of himself and some of his other creditors; that witness proceeded to take a list of the articles to be embraced in the proposed deed of trust, and in doing so, the piano was mentioned by him, whereupon Michael Mulholland immediately said the piano should not be included in the deed of trust, as he had already disposed of it, or sold it, to Peter Mulholland, the plaintiff, for a debt he owed him. The said Peter was present at the time, and a further conversation then took place between the said Peter and the said Michael, in relation to the piano and the sale of it; the substance of which was, that there was a sale of the piano from Michael to Peter, for a valuable consideration, and that a certain brown mare was purchased by Peter, of Michael, for the same purpose. This proof, upon objection by the defendants, was excluded from the jury by the Circuit Judge.
It seems to us that this is erroneous. Manifestly, in a contest between the plaintiff and the said Michael, in regard to the title of this property, these admissions would be competent against him, upon the principle of a declaration against his interest; and also in a contest between the plaintiff and a third party, claiming this property under a purchase made by him of said Michael, at a period subsequent to the admissions, they would be admissible, because the purchaser is in privity with his vendor, and takes the property encumbered with his *311 declarations. They are offered as coming from a privy in estate, and, therefore, in law, from the party himself.
Thus it has been held, upon an issue between two persons, whether a third person died possessed of certain personal property, that evidence might be given of a declaration, made by that third person, that he had assigned the property, the party against whom the declarations were adduced, claiming under that person: Irat vs. Finch, 1 Taunt., 141. This principle is expressly settled in Guy vs. Hall, 3 Murph. Rep., 150, and May vs. Gentry, 4 Dev.; 2 Batt. Law Rep., 117. The declarations are not only evidence against the man who made them, but against one claiming under him by a cotempora-neous, or subsequent contract.
These admissions by third person, as they derive their value and legal force from the relation of the party making them to the property in question, may be proved by any competent witness who heard them, without calling the party by whom they were made. ’ The question is, whether he made the admission, and not merely whether the fact is as he admitted it to be. Its truth, where the admission is not conclusive, (and it is seldom so,) may be controverted by other testimony, even by calling the party himself, when competent; but it is not necessary to produce him: his declarations, wheni admissible at all, being admissible as original evidence, and not as hear-say, and to be taken as parts of the resgestee. 1 Greenl. Ev., secs. 189, 190, 191; 3 Murph. Rep., 150. And it is immaterial whether he be dead or alive, or that he may be examined as a witness in the case, his declarations being still admissible. In truth, in a case like this, it is but a mode of making out title. *312 Now, upon what principle is it, that the creditors of Michael Mulholland, who have become such since these declarations were made, shall escape being onerated with them as evidence? Do they not claim under him, and seek to sell this property as his? It is true, they may not, in all respects, be in privity with him, since they may assail the transaction between him and the plaintiff for fraud, and thus undo what he could not; and so may a subsequent purchaser, who was intended to be defrauded by the previous sale; and yet, we have seen, the admissions are evidence against him.
If the witness had heard the sale made between the plaintiff and his brother, then, beyond all debate, what they said and done at the time, would be admissible; and if they, afterwards, when together, or the said Michael, when alone, before the existence of the debts of these creditors, declared the fact of the sale, or its terms, these declarations, in our opinion, become original evidence of the plaintiff's title, and were admissible for whatever they were worth, in a contest with the creditors, not only upon the principle of privity before stated, but as a method of establishing title.
We are not to be understood as holding, that if the debts of these creditors originated anterior to the declarations, or even to the plaintiff’s purchase, they would not, upon the principle stated, be equally admissible. On the contrary, we think they would — the levy upon the property being subsequent to the declarations. But if the lien of the creditors attached prior to the declarations, then they could not be effected by them. Of course, the Sheriff, or other officer, in seizing this property, would be subject to the same rules of evidence.
*313 But, it is said, if this be so, there should not be a new trial; because the said Michael, himself, was examined by the plaintiff, and established the sale upon oath, and that, ¡therefore, the evidence of Hancock was unnecessary, it being impossible that the mere declarations, or admissions, of the witness, could be of greater weight in the case than his oath. But they were not, as detailed by Hancock, the mere declarations, or admissions, of Michael, but something more — a circumstantial narration of the contract of sale was made betiveen Peter and Michael. But if they were the mere admissions of Michael, we cannot stop to inquire how much additional weight the evidence thus improperly withheld from the jury, might have had with them, had it been received. We can readily see that the rejected evidence might, upon the state of facts in this record, have had an impartial influence in the case: 3 Hum., 222-224.
The judgment will be reversed, and a new trial awarded.